Adrienne Ellington
LAW OFFICE OF ADRIENNE ELLINGTON, PLLC
1700 West Koch, Suite 9
Bozeman, Montana 59715
Telephone: (406) 602-4200
Email: adrienne@ellingtonlegal.com

*Attorney for Defendant*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DOMINIQUE SEBASTIAN PARIS,<br><br>Defendant. | Case No. CR-19-119-BLG-SPW-1<br><br>**DEFENDANT'S AMENDED MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. §3582(c)(1)(A)** |

COMES NOW the Defendant, Dominique Sebastian Paris, by and through his attorney of record, Adrienne Ellington and hereby offers this Amended Motion to Reduce Sentence pursuant to the Court's authority under 18 U.S.C. §3582(c)(1)(A). The Government opposes this motion. In support of the Defendant's (Mr. Paris) request, Mr. Paris submits the following:

## INTRODUCTION

On June 17, 2021, District Judge Brian M. Morris issued Standing Order BMM-13 regarding appointment of counsel in criminal cases affected by the First

1

Step Act of 2018. In accordance with that Order, undersigned stands on the arguments already articulated and submits the following supplemental brief to assist Mr. Paris with his motion for compassionate release. (Standing Order BMM-13(1)(d) "The FDOM or CJA appointed counsel shall offer to seek any available relief for their client through appropriate pleadings, including petitions, motions, or applications relating thereto."). Further, this Court issued an order appointing counsel for Mr. Paris on August 29, 2023, to allow for counsel to file supplemental motions. (Doc. 162).

## JURISDICTION

On December 21, 2018, the President signed the First Step Act into law. Congress amended §3582(c)(1)(A) to provide the sentencing judge jurisdiction to consider a defendant's motion for reduction of sentence under this subsection when "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf **or** the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." (Emphasis added).

Defendant's motion is properly before this Court because more than 30 days have passed since Defendant submitted his request for compassionate release with the warden and there is no indication from the records that the warden responded.

(Doc. 161). It therefore appears Paris exhausted his administrative remedies as required by statute.

## BACKGROUND

On July 22, 2021, Defendant Dominique Sebastian Paris received a sentence of 140 months under 21 U.S.C. § 841(a)(1) and ordered to participate in the Residential Drug Treatment Program (RDAP) with a 5-year term of supervised release following each custodial sentence. (Doc. 134).

Mr. Paris is currently located at F.C.I. Mendota in Mendota, California, and is projected to be released on July 31, 2029. *See* BOP Inmate Finder https://www.bop.gov/inmateloc/ (last visited February 9, 2024).

## LEGAL STANDARD

18 U.S.C. § 3582(c)(1)(A)(i) provides that a district court may grant compassionate release or any other sentence reduction, "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i) (referring to U.S.C. §3553(a)); *accord United States v. Aruda,* 993 F.3d 797 (CA9 2021). Guided by § 3553(a)'s factors, the Court is empowered to review the totality of pertinent circumstances Mr. Paris' case presents, including "*any…* reason for release that [he] might raise." *Aruda,* 993 F.3d at 801 (emphasis added in original; citations and quotation marks omitted).

3

## ARGUMENT

In general, federal courts are forbidden "to modify a term of imprisonment once it has been imposed." *Freeman v. United States*, 564 U.S. 522, 526 (2011). However, a few narrow exceptions to this general rule exist, including the exception contained 18 U.S.C. §3582(c)(1). As amended by the First Step Act, a district court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" after consideration of the factors set forth in section 3553(a) to the extent that they are applicable, if the district court finds that extraordinary and compelling reasons warrant such a reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §3582(c)(1)(A)(i), (iii).

No statutory definition of "extraordinary and compelling reasons" exists and, instead, Congress indicated that the Sentencing Commission shall describe what constitutes extraordinary and compelling reasons for a sentence reduction. See 28 U.S.C. §994(t); 28 U.S.C. §994(a)(2). The Sentencing Commission's policy statement includes discussion about (1) extraordinary and compelling reasons; (2) the defendant being at least 70 years old and having served at least 30 years in prison; (3) the defendant not being a safety danger; and (4) a sentence reduction being consistent with the policy statement. USSG §1B1.13.

4

On November 1, 2023, Congress adopted 11 proposed amendments recommended by the United States Sentencing Commission. In the amendments the Commission amended the compassionate release statute to move the list of extraordinary and compelling reasons from the Commentary to the guidelines itself.  Secondly, the proposed amendments modified "Family Circumstances" category at new subsection (b)(3) in three ways. The amendment revised the current subcategory relating to the death or incapacitation of the caregiver of a defendant's minor child to extend to a defendant's child who is 18 years of age or older if they are incapable of caring for themselves due to a mental or physical disability or mental condition.  The amendment also broadened the definition of immediate family member and allows a defendant to request an amendment to their sentence when they are the only person that can provide care for an incapacitated parent.  A plausible contention is that the Commission recognized the substantial burden states incur in for caring for an inmate's family members and recognized the benefits of keeping family units intact for the support and care of each other.

    A.    **EXTRAORDINARY AND COMPELLING REASONS**

        i.    **Mr. Paris's serious medical disease will cause irreversible vision loss if left untreated.**

Section 1B1.13(b)(1) recognizes serious medical conditions requiring long-term care that is not being provided while in custody and also adds language to

address some of the unique and unforeseen circumstances arising from COVID-19 pandemic. The new reasons are targeted to ensure consideration of the defendant's individual health circumstances, the level of risk at the defendant's facility, and the ability to adequately mitigate the defendant's individualized risk.

Mr. Paris asserts that he has a serious medical disease known as keratoconus, that causes complete blindness, diminishes his ability to provide self-care within the environment of a correctional facility, and he is not expected to recover from this condition without needed long-term treatment.

The severity of the keratoconus varies widely. *See* Exhibit A. Some people experience mild symptoms and minimal vision loss, while others have more severe progression and require more advanced treatment. Id. The rate of progression is also unpredictable. Id. Some people's keratoconus progresses rapidly, while others experience slow or even no progression. Id.

For advanced cases of keratoconus, specialty contact lenses like rigid gas permeable (RGP) or scleral lenses can provide excellent vision. https://www.hopkinsmedicine.org/health/conditions-and-diseases/keratoconus. These lenses vault over the irregular corneal surface, providing a clear optical pathway for light. Id.

Corneal transplantation is rarely needed, but it can be a successful option for people with severe keratoconus and significant vision loss. Id. With advances in

6

surgical techniques and tissue matching, corneal transplants offer a high rate of success in restoring vision. Id.

The key to a good prognosis with keratoconus is regular monitoring by an ophthalmologist. Id. Early detection of any changes in the cornea allows for prompt intervention and can help prevent further vision loss. Id. With proper management, people with keratoconus can enjoy a good quality of life and achieve their full potential. Id.

- The severity of the condition varies widely. Some people experience mild symptoms and minimal vision loss, while others have more severe progression and require more advanced treatment.
- The rate of progression is also unpredictable. Some people's keratoconus progresses rapidly, while others experience slow or even no progression.
- There are a number of factors that can influence the prognosis, such as age, genetics, and environmental factors.

Here, Mr. Paris was diagnosed with unstable, bilateral keratoconus on or about December 8, 2022. *See* Exhibit B.  Medical notes in Mr. Paris' BOP Medical file indicate <u>severe</u> keratoconus with a recommendation for mini-scleral lenses. Id. Medical notes as recent as July 27, 2023, state, "[w]as on schedule for, "Blind x 2 years" and concludes that Mr. Paris' condition is severe and his prognosis for treatment is poor. Id. Notably, Mr. Paris was seen by an optometrist on February

7

27, 2023, and his medical notes reveal that he was able to see at 20/200 in both eyes. Id.  Just <u>one (1) month later</u>, on March 21, 2023, Mr. Paris's vision declined to 20/400 in both eyes and was referred to treatment for glaucoma and keratoconus. Id.

Mr. Paris's debilitating disease developed after Mr. Paris began serving his term. The severe loss of sight, by itself, could qualify as an extraordinary and compelling reason for compassionate release. The fact that he is nearly blind due to the severity of his disease and BOP medical neglect makes his situation even more compelling to grant a compassionate release.

### ii. Mr. Paris's serious medical condition affects his ability to function in prison.

A court may grant compassionate release if it is consistent with the applicable policy statements issued by USSG 18 U.S.C. § 3582(c)(1)(A)(i).

The Medical Condition policy statement applies if a defendant is:

> …(i) suffering from a serious functional or cognitive impairment, or
>   (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1.B.1.13(b)(1)(B). Mr. Paris's failing eyesight is a serious functional impairment, and he is experiencing deteriorating physical health due to a debilitating disease.

8

It cannot be denied that Mr. Paris has a serious medical condition because the Ninth Circuit Court of Appeals has determined "total blindness in one eye is a serious medical need." *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014). In *Colwell*, the Plaintiff-Appellant filed a civil rights lawsuit alleging that his 8th Amendment rights have been violated because facility officials were "deliberately indifferent to his serous medical needs in refusing him [cataract] surgery to restore his vision." *Id.* at 1065.

Here, Mr. Paris was advised that he needed scleral lenses for treatment for his keratoconus, which has not been followed through with by the BOP to the undersigned's knowledge. His significant degradation of his eyesight over the last year is a strong indication that his condition is serious and that he is likely to become completely blind and will need more advanced medical care than the BOP will accommodate, such as cataract surgery. *See* Exhibit B. Mr. Paris's loss of sight is a serious medical condition and a serious functional impairment that qualifies him to be considered for compassionate release.

Mr. Paris's failing vision has more than substantially diminished his ability to provide self-care within a correctional facility and he fears for his safety. To the undersigned's knowledge, the BOP has not followed through with recommended care of providing mini-scleral lenses to prevent further loss of Mr. Paris' vision.

9

He should be released as soon as possible in order to seek the medical treatment he deserves to preserve what vision he has left.

### iii. Mr. Paris's family circumstances also qualify for compassionate release policy.

The Family Circumstances policy statement states that the following circumstances can be considered:

> (C) The incapacitation of a of the defendant's parent when the defendant would be the only available caregiver for the parent.

USSG §1.B.1.13(b)(1)(B). Mr. Paris's mother, Darlene Paris, is separated from her husband and lived by herself in West Sacramento, California, until recently. *See* Exhibit C. Transcript of phone interview with Mrs. Darlene Paris. Darlene is currently in a care facility so that she can get the care she needs for an ankle injury. Id. When she heals, she expects to return to her home in West Sacramento, California. Id. Dominque Sebastian Paris is Darlene's only child. Id. Darlene has been diagnosed with congestive heart failure, Stage 3 kidney disease, spinal dysplasia, diabetes, severe rheumatoid arthritis, and COPD. Id. Darelene is completely bed-ridden and requires assistance from health care providers provided through the state of California. Id. Darlene's health care providers do not stay overnight with her in her home and do not feel she is unsafe alone during the night hours. Id. Darlene has family members in Sacramento, but then cannot travel 60-miles a day to help provide care to her. Id. Darlene takes daily prescribed

10

medications and is on oxygen daily. Id. Darelene uses a bed pan for toileting and cannot leave her bed to bathe or shower. Id. Darelene cannot prepare her own meals, requires some assistance in eating her meals, and everything is brought to Darlene in her bed. Id. Darelene desperately needs Mr. Paris home with her to provide emotional and physical care and support. Id. If Mr. Paris is released to live with and care for Darlene, he will also be able to seek the medical assistance he requires to address his disease and prevent complete blindness.

> iv. **Mr. Paris poses no danger to anyone's safety or to the community.**

Mr. Paris will be 37 years old upon release and disabled by extremely low to no vision. Mr. Paris's current eyesight will not allow him to drive a car. It is also not likely Mr. Paris will have the opportunity or ability to engage in further criminal activity if he is released because of his physical eyesight condition and because he will be immersed in providing daily care to his elderly bedridden mother who cannot be left home alone.

More broadly, data suggests that releasing inmates and reducing overcrowding in prisons and jails will directly protect the public from COVID-19. This finding is an important reminder that prisoners are people too, and our collective well-being is inextricably intertwined with theirs. *Cf. Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018) ("maintaining . . .fairness and integrity

in the justice system [requires] that the courts exhibit regard for fundamental rights and respect for prisoners 'as people.'") (internal citations omitted)

## B. THE RELEVANT FACTORS IN §3553(a) WEIGH HEAVILY IN FAVOR OF COMPASSIONATE RELEASE

A district court may grant compassionate release if it is consistent with the applicable policy statements issued by USSG 18 U.S.C. § 3582(c)(1)(A)(i), the court must adhere to any applicable policy statements issued by the Sentencing Commission and consider whether a reduction is warranted after considering the factors set forth in 18 U.S.C. § 3553(a). One such policy statement recognizes serious medical conditions requiring long-term care that are not being provided while in custody provides an avenue for compassionate release. U.S. Sent'g Guidelines Manual § 1B1.13(b)(1) (U.S. Sent'g Comm'n 2023) ("U.S.S.G.").

A district court can reduce a sentence under 18 U.S.C. § 3582(c)(1) if it determines that "extraordinary and compelling reasons warrant a sentence reduction" and if, after "weigh[ing] the factors set forth in 18 U.S.C § 3553(a)," the "requested sentence reduction is warranted under the particular circumstances of the case." *United States v. Wright,* 46 F.4th 938 945 (9th Cir. 2022).

In *United States v. Trujillo,* 713 F.3d 1003 (9th Cir. 2013), we held that when a defendant "argu[ed] in part that favorable treatment was justified by various factors under 18 U.S.C. § 3553(a), including his family ties, his lack of other criminal history, his post-sentencing rehabilitation, and the need to avoid

12

unwarranted sentencing disparities[,]" the district court erred in concentrating on "[the defendant]'s role in the offense and the amount of drugs involved" without "discuss[ing] the § 3553(a) factors urged by [the defendant]." *Id.* at 1005.

Turning to the §3553(a) factors in this case, Mr. Paris's offense was serious, but it was non-violent. He was not a high-level dealer. Mr. Paris conspired with co-defendant Bennett to receive packages of methamphetamine through the mail and sold them to other dealers. Mr. Paris and his co-defendant were deemed responsible for possessing with the intent to distribute 294.4 grams of methamphetamine. PSR ¶23. Mr. Paris's possession of a gun, his prior criminal history, and status points drove up his advisory guideline range and is entirely related to his methamphetamine addiction.

Mr. Paris is not currently participating in the Residential Drug Treatment Program (RDAP) because the program is not offered at FCI Mendota. https://www.federalprisontime.com/rdap-locations. Mr. Paris has served approximately 4 years and 5 months of his sentence. *See* Exhibit D. Mr. Paris's mother speaks to him frequently and asserts that her son has changed and accepts responsibility for his actions. *See* Exhibit C. At 36 years old, Mr. Paris is suffering from a serious medical disease that will certainly lead to complete blindness if left untreated. It was recommended by optometrist Dr. Yao that Mr.

Paris be fitted for mini-scleral lenses to treat his keratoconus. However, even if the BOP medical allows Mr. Paris to be fitted with mini-scleral lenses, Mr. Paris's condition appears to be degrading at a significant rate and will likely result in complete blindness. Mr. Paris may require a corneal transplantation, something the BOP is unlikely to accommodate. Mr. Paris's keratoconus has already affected his ability to care for himself in prison, he is reliant on others for assistance, and his inability to see causes him to fear for his safety on a daily basis. Mr. Paris's disease will leave him unable to drive due to his lack of vision. Mr. Paris's release plan is to live full-time with his elderly, bedridden mother. His mother requires around the clock assistance as she has no other family members to assist in her daily care. Subsequently, Mr. Paris presents as a low-risk to reoffend if this Court grants his request for a compassionate release.

//

//

//

//

## CONCLUSION

Post-sentencing changes to in a defendant's health or that of his family member(s) is particularly relevant to reveal a defendant's likelihood of future criminal conduct and is a critical factor to consider.

WHEREFORE, Defendant respectfully requests that this Court grant his motion for compassionate release.

RESPECTFULLY SUBMITTED this 9th day of February, 2024.

                                                                 DOMINIQUE SEBASTIAN PARIS

                                                                 By: /s/ Adrienne R. Ellington
                                                                 ADRIENNE R. ELLINGTON

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is in compliance with Local Rule 7.1(d)(2) (as amended). The brief's line spacing is double-spaced, and is proportionately spaced, with a 14-point font size and contains less than 6,500 words.

DATED this 9th day of February, 2024.

                                                                  By: /s/ Adrienne R. Ellington
                                                                ADRIENNE R. ELLINGTON
                                                                *Counsel for Defendant*

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on February 9, 2024, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| __1, 2__ | CM-ECF |
| _____ | Hand Delivery |
| __3__ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1. CLERK, UNITED STATES DISTRICT COURT

2. Julia Patton
   United States Attorney's Office
   2601 2nd Avenue North, Suite 3200
   Billings, MT 59101
       Counsel for the United States

3. Dominique Sebastian Paris
       Defendant

    /s/ Adrienne Ellington
    ADRIENNE ELLINGTON
    Counsel for Defendant