**JULIE R. PATTEN**
Assistant U.S. Attorney
U.S. Attorney's Office
James F. Battin U.S. Courthouse
2601 Second Ave. North, Suite 3200
Billings, MT 59101
Phone:      (406) 657-6101
FAX:         (406) 657 6989
E-mail:      Julia.Patten@usdoj.gov

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, vs. **DOMINIQUE SEBASTIAN PARIS,** Defendant. | CR 19-119-BLG-SPW-01 **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)** |

Defendant Paris filed a motion for release under 18 U.S.C. § 3582(c)(1)(A). *See* Docs. 161, 179. Paris is currently serving a 140-month sentence for possession with intent to distribute methamphetamine. Doc. 134. Paris's motion should be denied because (1) there are no "extraordinary and compelling" reasons for his

1

release; and (2) his release would not be justified under the 18 U.S.C. § 3553(a) factors.

## INTRODUCTION

1. **The offense**

In April 2019, law enforcement learned of a package of methamphetamine destined for Dominique Paris. PSR ¶ 11. In August 2019, a confidential source told law enforcement that Paris was expecting a substantial amount of methamphetamine in the mail. PSR ¶ 12. The source reported purchasing methamphetamine from Paris in the past, and that Paris often carries a .45 caliber handgun. *Id.*

On August 8, 2019, law enforcement conducted a controlled purchase of methamphetamine from Paris, and his co-defendant Gough. PSR ¶ 13. The informant purchased 54.4 grams of pure methamphetamine from Paris for $1,600. *Id.*

On August 20, 2019, law enforcement received information from the confidential source that Paris and Gough were expecting another package. The package was intercepted, and a subsequent search revealed 240 grams of pure methamphetamine. PSR ¶¶14-15. Law enforcement arranged a controlled pickup at the post office. PSR ¶¶ 16-17. Paris arrived with co-defendant to pick up the package. PSR ¶ 17. During a pat down of Paris, agents located a loaded .45 caliber

Kimber semi-automatic handgun in Paris's pants pocket. *Id.* In an interview with agents, the defendant denied knowing anything about the package. PSR ¶ 18. Unfortunately for him, his text messages told another story. PSR ¶¶ 20-21. Agents found several messages indicating Paris and co-defendant Gough were selling methamphetamine. *Id.* Photos found on his phone showed him with the same .45 caliber gun seized by agents, as well as photos of other firearms including one of him pointing a handgun at the cell phone camera. *Id.*

On September 16, 2019, the grand jury filed an indictment charging Paris with four counts: conspiracy to possess with the intent to distribute methamphetamine; possession with intent to distribute methamphetamine; distribution of methamphetamine; and carrying a firearm during and in relation to a drug trafficking crime. Doc. 6; PSR ¶ 3. Paris ultimately pled guilty to count 2, possession with intent to distribute methamphetamine. PSR ¶ 5. While awaiting sentencing, Paris assaulted his co-defendant, Clifford Bennett. PSR ¶ 8.

Paris faced a mandatory minimum sentence of 10 years imprisonment. PSR ¶¶ 92. His advisory guideline range was 188 to 235 months imprisonment, based on a total offense level of 31 and a criminal history category of VI. PSR ¶ 93. On July 22, 2021, Paris was sentenced to a below guideline sentence of 144 months. Doc. 134.

## 2. Paris's criminal history

The PSR writer calculated Paris's criminal history category as VI based on 17 criminal history points. PSR ¶ 53. Paris's extensive criminal history began at age 21 when he was convicted of his first felony. PSR ¶ 41. He has steadily accumulated criminal convictions since. He has three prior domestic violence convictions, including a felony conviction for false imprisonment. PSR ¶ 43, 47, 50. Other scored offenses include convictions for theft and possession of controlled substances. PSR ¶¶ 44, 45, 46, 48. He was on probation for two offenses when he committed the instant offense. PSR ¶ 52.

## 3. Incarceration and projected release date

Paris is currently incarcerated at Mendota FCI in California. *See* Inmate Locator, http://www.bop.gov/inmateloc (last accessed February 12, 2024). His projected release date is July 31, 2029. *Id.* To date, Paris has served 35 percent of the sentence pronounced by this Court.

## 4. Paris' Motion for Compassionate Release

According to the defendant's pro se motion for compassionate release, he filed a request for release with the warden at his facility on May 23, 2023. Doc. 161. A request is deemed denied after 30 days. 18 USC § 3582(C)(1)(A). On August 28, 2023, Paris filed a pro se motion for compassionate release. Doc. 161.

This Court appointed counsel for Paris and an amended motion was filed on February 9, 2024.  Docs. 163, 179.

Paris argues he should be released because he has a serious medical condition, keratoconus, that requires long-term treatment, and that he needs to be released to care for his bed-ridden mother. Doc 179. at 6-11. He further argues he no longer presents a danger to the community thus release is justified. *Id.*

## ARGUMENT

Paris's medical issues, and need to care for his mother, do not constitute extraordinary and compelling reasons for release under the new policy statement at §1B1.13.  Additionally, the § 3553(a) factors weigh heavily against Paris's early release.  Paris's motion for compassionate release should be denied.

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)).  Compassionate release is one of the few exceptions to this rule, allowing a court to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) . . . ." 18 U.S.C. § 3582(c)(1)(A).  This relief, however, is permanent and therefore subject to strict statutory conditions.

The First Step Act affords district courts discretion in reducing an existing term of imprisonment if a defendant 1) first seeks relief from the Bureau of Prisons, 2) a reduction is consistent with the applicable policy statements of the Sentencing Commission, 3) the relief is warranted by "extraordinary and compelling reasons", and 4) a reduction takes into consideration the sentencing factors of 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c).

Congress provided no statutory definition of "extraordinary and compelling reasons." *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021). The definition of "extraordinary and compelling reasons" comes from the United States Sentencing Commission's policy statement at USSG § 1B1.13. *Id.* at 800-01; *see also* 18 U.S.C. § 3582(c)(1)(A)(i). Recent amendments to the United States Sentencing Guidelines list specific extraordinary and compelling reasons warranting consideration of release: 1) medical circumstances of the defendant; 2) age of the defendant; 3) family circumstances of the defendant; 4) victim of abuse; 5) other reasons; and 6) unusually long sentences. USSG §1B1.13(b).

Relevant to Paris's motion, the amended policy statement expands the medical circumstances that may warrant release. The application notes to the § 1B1.13 policy statement identify physical or medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or

6

medical condition, suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A). Relevant here is whether "the defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13, cmt. n.1(C).

Defendant bears the burden of establishing extraordinary and compelling reasons warranting compassionate release. *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022).

**A. Paris's medical condition can be met by the Bureau of Prisons.**

Paris was diagnosed with unstable, bilateral keratoconus that require mini-scleral lenses. Doc. 179 at 7. According to Paris, his condition is "severe and his prognosis for treatment is poor" and that his deteriorating vision is an extraordinary and compelling reason for release.

The Bureau of Prisons (BOP) medical records document the ongoing medical care Paris has received for this condition, and the treatment recommended. *See* Def. Ex. B. Paris has received consistent treatment since December 2022 from

7

outside ophthalmologists and optometrists for his keratoconus. In December of 2022, the ophthalmologist recommended mini-scleral lenses with a follow-up for fitting and training. Ex. B at 2. In March of 2023, Paris had an appointment with contract optometrist Dr. Yao with a recommendation for Paris to follow up with ophthalmology for mini scleral lens fitting for keratoconus. Ex. B at 4. On July 27, 2023, Paris had two pending consults for optometry and ophthalmology. Ex. B at 6. On January 25, 2024, there was a callout scheduled for "vision screen" but Paris was a no show. Gov't Ex. 1 at 4. On February 4, 2024, he sent a request regarding being fitting for a special contact. Gov't Ex. 1 at 2. On February 9, 2024, he had a vision consult. Gov't Ex. 1 at 22.

Paris argues BOP has not followed through with recommended care of providing him lenses, but he had an exam as of February 9, 2024 in response to his earlier request. Per his medical records, the lenses are necessary but not emergent. *See* Gov't Ex. 1 at 10. The BOP has the ability to meet the needs presented by Paris's medical condition. If he finds that treatment is inadequate at his current placement, the remedy is not compassionate release but rather relief through the BOP administrative process or through an Eighth Amendment claim in the district where he is incarcerated.  While Paris's condition is undoubtedly concerning, the BOP is managing his care and Paris does not explain what could be, or would be, done for him outside of custody that the BOP has not already done. There is

nothing to suggest he has a plan, or the means to obtain medical treatment outside the BOP. Paris has not shown extraordinary and compelling reasons to warrant a sentence reduction or compassionate release.

### B. Paris cannot demonstrate he is a suitable or capable caregiver for his ailing mother to make it an extraordinary and compelling reason for his release.

Paris also argues he should be released to care for his elderly mother despite having a serious medical condition that is a "serious functional impairment" that has "substantially diminished his ability to provide self-care within a correctional facility." Doc. 179 at 9. But, he cannot show he is a capable or suitable caregiver for his ailing mother warranting release.

Caring for a disabled parent is not included as an "extraordinary and compelling reason" within the definition provided by application note 1 to the policy statement. "Lower courts are split on whether the need to care for elderly parents is an extraordinary and compelling circumstance allowing for compassionate release." *United States v. Nott*, 2020 WL 6802386, at *1–2 (E.D. Cal. Nov. 19, 2020) (citing *United States v. Ledezma-Rodriguez*, 2020 WL 3971517, at *7 (S.D. Iowa July 14, 2020)) (noting disagreement among courts and finding that the need to care for a parent could be sufficient in some circumstances); *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) (holding that courts could consider factors not enumerated by the Sentencing

9

Commission and that being a sole caregiver for a parent was an extraordinary and compelling reason warranting release); *but see United States v. Goldberg*, 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020) ("While certainly admirable, a desire to help care for one's elderly parents does not qualify as an 'extraordinary and compelling reason' for release under U.S.S.G. § 1B1.13, nor, therefore, under 18 U.S.C. § 3582(c)(1)(A)(i)."); *United States v. Ingram*, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) (noting the need to care for a 93-year-old mother in hospice was not an extraordinary and compelling reason for compassionate release as "many, if not all inmates, have aging and sick parents").

Nevertheless, the defendant bears the burden of establishing an extraordinary and compelling reason warranting compassionate release. He has failed to meet this burden. The United States has no reason to doubt that Paris's mother is suffering from the litany of ailments outlined in Exhibit C. His mother is currently in the care of a facility because she could not safely live alone. Ex. C. at 4. According to Ms. Paris, if she wants to leave the facility "with clearance from a medical perspective" she must have someone living with her. *Id.* Her current situation demonstrates she already has care, and quite frankly, superior care to anything Paris could provide. As noted above, his own medical condition has impacted his ability to care for himself and his sight is deteriorating. He clearly is not capable for caring for his mother who has significant medical conditions

requiring round the clock care. He cannot be so impaired physically to necessitate release yet physically capable to provide the care she requires. Paris cannot meet his burden that he would be a capable or suitable caretaker for of his mother to warrant his release.

**B.     The 18 U.S.C. § 3553(a) factors do not support early release.**

Any compassionate release decision must also consider the factors under 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A).  Those factors include the nature and circumstances of the offense, the defendant's history and characteristics and the need for the sentenced imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and to protect the public from further crimes of the defendant.  18 U.S.C. § 3553(a)(1)-(2).  Those factors do not support the defendant's request for premature, permanent release.

There is little doubt this is a serious offense.  Paris was trafficking methamphetamine and carrying a firearm while doing so.  PSR ¶ 17.  Trafficking drugs while armed creates a significant danger to the community.  Paris's instant offense and his criminal history make it clear that Paris is a danger to any community he lives in.  Paris has a lengthy, and violent criminal history. PSR ¶¶ 40-50. He was on probation for two different convictions when he committed the instant offense. PSR ¶ 52. Paris received several short sentences and probationary

sentences on these convictions, and it is clear from his continued and escalating criminal conduct that those sentences were insufficient to impress upon him the need to follow the law and deter him from committing further crimes.

This Court found that the sentence imposed in this case sufficient but not greater than necessary to serve the purposes of sentencing. The sentence was necessary then and remains necessary now. Paris has no history of being a productive member of society and has had almost no gainful employment in his life. PSR ¶¶ 83-87. Instead, he has supported himself by selling drugs. PSR ¶ 75. If Paris were to be released now, his sentence would be woefully insufficient to account for the needs of deterrence, just punishment, and to promote respect for the law that drove the imposition of his sentence in the first place. Therefore, this Court should find that the § 3553(a) factors militate against compassionate release.

## CONCLUSION

The United States respectfully requests that the defendant's motion for compassionate release be denied.

DATED this 23rd day of February, 2024.

> JESSE A. LASLOVICH
> United States Attorney
>
> */s/ Julie R. Patten*
> Assistant U.S. Attorney
> Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. CR 47.2(c), the United States' response to Defendant's motion for release is proportionately spaced, has a typeface of 14 points or more, and has a body containing 2,731 words.

>  */s/ Julie R. Patten*
>  Assistant U.S. Attorney
>  Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2024, a copy of the foregoing document was served on the following persons by the following means:

    (1, 2)  CM/ECF
    ( )      Hand Delivery
    ( )      U.S. Mail
    ( )      Overnight Delivery Service
    ( )      Fax
    ( )      E-Mail

1. Clerk, U.S. District Court

2. Adrienne Ellington
   LAW OFFICE OF ADRIENNE ELLINGTON, PLLC
   1700 West Koch, Suite 9
   Bozeman, MT 59715
   Attorney for Defendant

                                        */s/ Julie R. Patten*
                                        Assistant U.S. Attorney
                                        Attorney for Plaintiff