Adrienne Ellington
LAW OFFICE OF ADRIENNE ELLINGTON, PLLC
1700 West Koch, Suite 9
Bozeman, Montana 59715
Telephone: (406) 602-4200
Email: adrienne@ellingtonlegal.com

*Attorney for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DOMINIQUE SEBASTIAN PARIS,<br><br>Defendant. | **Case No. CR-19-119-BLG-SPW-1**<br><br>**REPLY IN SUPPORT OF DEFENDANT'S AMENDED MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. §3582(c)(1)(A)** |

COMES NOW the Defendant, Dominique Sebastian Paris, by and through his attorney of record, Adrienne Ellington and hereby offers this Reply in support of his Amended Motion to Reduce Sentence pursuant to the Court's authority under 18 U.S.C. §3582(c)(1)(A). In support of the Defendant's (Mr. Paris) request, Mr. Paris submits the following:

**ARGUMENT**

**A. EXTRAORDINARY AND COMPELLING REASONS**

1

> **i. Mr. Paris's medical condition is serious. The BOP is responsible for the Paris's vision worsening because it has not timely acted to provide recommended medical care to treat his disease.**

The Government concedes that Mr. Paris's medical disease, keratoconus, is 'undoubtedly concerning" and can cause complete blindness, but asserts that the BOP providing needed long-term treatment. Doc. 182 at 7 and 8. However, the Government cannot provide any evidence, apart from BOP documentation of continued optometrists and ophthalmologist appointments which continually consist of recommendations for mini scleral lens fittings. Doc. 182 at 7 and 8.

Since Mr. Paris's diagnosis of severe bilateral keratoconus and recommendation for mini-scleral lenses in December of 2022, he has had four (4) optometry appointments. Mr. Paris's most recent medical records (Doc. 183 Exb. 1), demonstrate that he has yet to be fitted for mini-scleral lenses. The Government argues that this is because the lenses are necessary, but not emergent. Gov't Ex. 1 at 10.

The May Clinic explains that treatment for keratoconus depends on the severity of a person's condition and how quickly the condition is progressing. https://www.mayoclinic.org/diseases-conditions/keratoconus/diagnosis-treatment/drc-20351357 Treatment for keratoconus aims to both manage the condition by slowing its advancement and improve vision for better quality of life. Id. Corneal collagen cross-linking is used to stabilize the structure of the cornea

and may be used to slow or stop keratoconus from getting worse. Id. This treatment can also help achieve better vision with glasses or contact lenses and prevent the need for a cornea transplant in the future. Id.

The effectiveness of vision correction in keratoconus cases depends on the stage of the disease. Id. Eyeglasses or contact lenses are used to treat mild to moderate keratoconus and will likely continue as long-term treatment. Id. In some cases of keratoconus, the cornea becomes scarred when the disease becomes advanced. Id. In advanced stages of keratoconus wearing contact lenses becomes difficult and a cornea transplant surgery might be necessary. Id.

In *Lindell*, the court released a seventy-three-year-old man from custody because his vision was failing. *United States v. Lindell*, 517 F. Supp. 3d at 1141 (D. Haw.2021). Similar to this case, the record contained substantial evidence that the BOP was failing to provide adequate treatment to Lindell, that such failure was causing Lindell's vision to worsen, and that Lindell's ability to care for himself was substantially compromised. Id. at 1147-49.

In *Derentz*, the court released Derentz because of his deteriorating vision. *United States v. Derentz*, 608 F. Supp. 3d 189, 191 (E.D. Pa. 2022). Derentz was sentenced for the offenses of one count of distributing child pornography and one count of possessing child pornography. Id. The Court imposed a sentence of 151 months for the first count and 120 months for the second count, with both terms to

run concurrently. Id.  The court pointed out significant lapses in the medical treatment provided by the BOP. Id. at 195. ("[T]he BOP's repeated delays in arranging for care to protect Derentz's vision constitute an extraordinary and compelling reason for release.").

Mr. Paris's debilitating disease developed after Mr. Paris began serving his term and has resulted in the severe loss of his sight.  While Mr. Paris's disease is not the fault of the BOP, the BOP is responsible for his care. The Government contends that continuing to be seen by optometrists and ophthalmologists is enough to meet the BOP's responsibility for Mr. Paris's medical care.  However, the BOP has neglected doctor recommended treatment for almost 1 1/2 years and it appears this has cost Mr. Paris a significant loss of his vision since his incarceration. Furthermore, if Mr. Paris remains incarcerated, he will likely continue to lose his sight while necessary treatments are available that may help slow disease progression, preserve his existing vision and increase his ability to provide self-care within the correctional facility.

The BOP's lack of adequate treatment for Mr. Paris's keratoconus constitutes an extraordinary and compelling reason to reduce his sentence and grant him a compassionate release.

> ii. **The BOP's inadequate response to Mr. Paris's medical conditions- namely its striking delays and lack of follow up- constitutes an "extraordinary and compelling" reason warranting his release under § 3582(c)(1)(A)(i).**

4

The Government objects that Mr. Paris's health issue does not justify release. Doc. 182 at 8 and 9. While the Government acknowledges that Mr. Paris suffers from keratoconus, it argues that he is receiving treatment for his health issues. Id. at 8. Additionally, the Government asserts that Mr. Paris's remedy for inadequate medical treatment in BOP custody should be to request relief though BOP administrative process or through an Eighth Amendment claim in the district where he is incarcerated. Id.

In general, "[t]he Eighth Amendment guarantees inmates in BOP custody the right to adequate medical care for a serious medical need," but "does not require that the BOP provide optimal medical care or the care of an inmate's choosing." *United States v. Williams*, No. 3:04CR95/MCR, 2020 WL 1751545, at *4 (N.D. Fla. Apr. 1, 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976); *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991)). Several district courts have established that the BOP's insufficient provision of medical treatment can constitute an extraordinary and compelling reason for compassionate release, even in non-terminal illness cases. *See, e.g.*, *United States v. English*, No. 2:19-CR-20164-TGB-EAS-1, 2022 U.S. Dist. LEXIS 230553 (E.D. Mich. Dec. 22, 2022) ("even if it is not clear that English's medical conditions alone are life-threatening, the record here demonstrates that the mismanagement of these conditions creates extraordinary

5

and compelling circumstances warranting compassionate release"); *United States v. Burr*, No. 1:15-CR-362-1, 2022 U.S. Dist. LEXIS 216371 (M.D.N.C. Dec. 1, 2022) ("Inadequate medical care may be a relevant factor in finding extraordinary and compelling reasons under § 3582(c)(1)(A)."); *United States v. Edwards*, No. 03-234 (JDB), 2022 U.S. Dist. LEXIS 129167 (D.D.C. July 21, 2022) ("persistent inadequate medical care can constitute an extraordinary and compelling reason warranting sentence reduction if the defendant's medical needs require release"); *United States v. Derentz*, 608 F.Supp.3d 189, 193 (E.D. Pa. 2022) ("Courts have also found that . . . delays in treatment, may qualify as an extraordinary and compelling reason for compassionate release."); *see also United States v. Verasawmi*, No. 17-254 (FLW), 2022 U.S. Dist. LEXIS 125856 (D.N.J. July 15, 2022); *United States v. Roman*, No. 2:14-cr-43, 2021 U.S. Dist. LEXIS 138299 (S.D. Ohio July 26, 2021), *aff'd*, No. 21-3718, No. 21-3718, 2022 U.S. App. LEXIS 606 (6th Cir. Jan. 7, 2022).

    Here, the BOP's response to the significant loss of Mr. Paris's eyesight has been disturbingly inadequate and dismissive. As noted above, the Mayo Clinic finds that vision correction is possible for keratoconus when the disease is treated early. Mr. Paris' vision declined incredibly from February 27, 2023, (20/200 in both eyes) to one month later (20/400 in both eyes). Id. Doc. 181 at 7 and 8. Mr. Paris's most recent medical records demonstrate that he has yet to be fitted for

mini-scleral lenses. (Doc. 183 Exb. 1). Consequently, this case represents a troublesome pattern of delay, demonstrating that the BOP is unable to provide adequate medical care to Mr. Paris. The BOP's deficient medical care and striking delays in treatment constitutes an extraordinary and compelling reason supporting Mr. Paris's request for a sentence reduction.

### iii. Mr. Paris is the only capable caregiver for his ailing mother.

Mr. Paris's case falls squarely within the criteria for "extraordinary and compelling reasons" outlined by the Sentencing Commission's policy guidance. See U.S.S.G. § 1B1.13 n.l. The Government does not dispute that Mr. Paris is the only available caregiver for an ailing, close member of his family, his mother. Doc. 181 at 10. The Government speculates that Mr. Paris is not a "suitable or capable caregiver" and that his mother is receiving superior care from a care facility than Mr. Paris could provide. Doc. 182 at 9 and 10.

In *Bucci*, the court stated:

> While surely many inmates share the plight of having an incapacitated spouse or partner at home, the Sentencing Commission has made clear that courts ought consider that circumstance an "extraordinary and compelling reason" for compassionate release only when the defendant is the "only available caregiver" for him or her. U.S.S.G. § 1B1.13 n.1(C)(ii). When a defendant is the "only available caregiver" for an incapacitated parent (perhaps a more unique occurrence given that inmates may have siblings or other family members able to care for their parents), then, it is likewise an "extraordinary and compelling" reason warranting compassionate release. But see *United States v. Ingram*, No. 2:14-cr-40, 2019 U.S. Dist. LEXIS 118304, at *4-5 (S.D. Ohio July 16, 2019) (denying compassionate

7

release to defendant to care for ill mother because "(m)any, if not all inmates, have aging and sick parents").

*United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019).

Similar to *Bucci*, Mr. Paris's role as the only potential caregiver for his ailing mother is an extraordinary and compelling reason to grant his request for compassionate release. The federal definition of blindness, as defined in the Social Security Act (SSA), is referred to as legal blindness or statutory blindness. The SSA updated the legal blindness definition as the best corrected visual acuity (VA) of 20/200 or less in one's better seeing eye. https://www.aoa.org/news/clinical-eye-care/diseases-and-conditions/legal-blindness-in-america?sso=y Although Mr. Paris could be considered legally blind, it is still possible the he can read, cook, work, and enjoy life because there are ways to adapt a home to accommodate blindness or low vision. See Eye Care Institute website: https://www.see-eci.com/blog/uncategorized/how-to-create-a-safe-home-for-the-visually-impaired-and-totally-blind/ Mr. Paris is able to provide care to his mother in her home and arrange transportation for medical appointments for himself or his mother. Furthermore, it can be argued that the Sentencing Commission recognized the substantial burden states incur in for caring for an inmate's family members and recognized the benefits of keeping family units intact for the support and care of each other. The early release of an inmate who is the only child of an ill parent is a sensitive issue that requires careful consideration. In such situations, it is essential

to consider the benefits of having a responsible child to bear the burden of care so that state resources can be used for others who truly need it.

### B. THE RELEVANT FACTORS IN §3553(a) WEIGH HEAVILY IN FAVOR OF COMPASSIONATE RELEASE

Turning to the §3553(a) factors in this case, Mr. Paris's offense was serious, but it was non-violent. Mr. Paris' keratoconus and the BOP's failure to provide timely medical care for Mr. Paris could not have reasonably been foreseen by this Court at the time of his sentencing. Mr. Paris's sentence is no longer fair and just punishment for his crimes. For almost a year and a half Mr. Paris has not received recommended mini-scleral lenses to help treat his failing eyesight. This has resulted in the inability to slow the advancement of his disease, prevented him from improving his vision for better quality of life, and possibly made corneal transplants a necessity in the future.

The Government argues that Mr. Paris's sentence will prevent him from committing further crimes and it is still necessary for him to remain in custody. However, a just outcome must consider both the harm inflicted on the community by Mr. Paris's crimes and the hardship he would face if he loses his sight. While this Court was convinced that a 144-month term of imprisonment was a just, it must consider now that part of the punishment

9

imposed was Mr. Paris's significant vision loss, an outcome that appears to have been preventable if he was provided any treatment for his disease in the 18 months since he was diagnosed. The BOP has failed to provide Mr. Paris with the necessary medical care for the past 18 months, raising concerns about his ability to receive proper treatment while incarcerated.

Mr. Paris presents little, if any danger to the community in his current state. The Court is able to address any concerns in conditions of release if his compassionate release is granted. Mr. Paris's crimes involved the distribution of drugs. Given the state of his vision, his age, and living in a community 1,000's of miles away from his connections with his ailing mother he is not likely to engage in the same criminal behaviors will be difficult, if not impossible. For these reasons, Mr. Paris has demonstrated he is not a danger to the safety of any other person or the community and requests this court consider his request for compassionate release.

## CONCLUSION

WHEREFORE, Defendant respectfully requests that this Court grant his motion for compassionate release.

RESPECTFULLY SUBMITTED this 10th day of March, 2024.

DOMINIQUE SEBASTIAN PARIS

By: /s/ Adrienne R. Ellington
ADRIENNE R. ELLINGTON

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is in compliance with Local Rule 7.1(d)(2) (as amended). The brief's line spacing is double-spaced, and is proportionately spaced, with a 14-point font size and contains 2161 words.

DATED this 10th day of March, 2024.

By: /s/ Adrienne R. Ellington
ADRIENNE R. ELLINGTON
*Counsel for Defendant*

## CERTIFICATE OF SERVICE
### L.R. 5.2(b)

I hereby certify that on March 10, 2024, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| 1, 2 | CM-ECF |
| | Hand Delivery |
| 3 | Mail |
| | E-Mail |

1. CLERK, UNITED STATES DISTRICT COURT

2. Julia Patton
   United States Attorney's Office
   2601 2nd Avenue North, Suite 3200
   Billings, MT 59101
   Counsel for the United States

3. Dominique Sebastian Paris
   Defendant

/s/ Adrienne Ellington
ADRIENNE ELLINGTON
Counsel for Defendant

11