IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DOMINIQUE SEBASTIAN PARIS,<br><br>Defendant. | CR 19–119–BLG–SPW–01<br><br><br>ORDER |

On August 28, 2023, Defendant Dominique Sebastian Paris filed a motion to reduce his 140-month federal drug sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 161, *see* Doc. 134 (Judg.).) His projected release date is July 31, 2029. *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed April 22, 2024). On August 29, 2023, counsel was appointed to represent Paris. (Doc. 162.) Appointed counsel filed an amended motion on February 9, 2024. (Doc. 179.) Paris argues that his medical circumstances, his elderly mother's caregiving needs, and the 18 U.S.C. § 3533(a) factors favor his release. The government opposes Paris's motion on the grounds that his health condition is being adequately managed, he could not provide adequate care to his mother, and the 18 U.S.C. § 3553(a) factors are not satisfied. For the reasons stated below, Paris's motion is denied.

1

## ANALYSIS

The First Step Act of 2018 gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons ("BOP") and the reduction: (1) is consistent with the applicable policy statements of the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam).

Here, Paris argues that his eye condition, the BOP's inability to provide him adequate medical treatment, and his mother's caregiving needs demonstrate extraordinary and compelling reasons to reduce his sentence. Because his mother ("Ms. Paris") has become incapacitated since his incarceration and he is her only available caregiver, Paris has established an extraordinary and compelling reason under the Guidelines. However, an extraordinary and compelling reason alone is not sufficient to justify compassionate release, and Paris has not established that his release is justified under the 18 U.S.C. § 3553(a) factors.

## I.   Exhaustion of Administrative Remedies

A defendant may only file a motion for compassionate release with the district court once he has "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30

2

days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Paris filed a request for relief with the warden of his facility on May 23, 2023. (Doc. 161-2 at 3.) Paris, having not received a response, moved for compassionate release on August 28, 2023, over 30 days after the receipt of his request by the warden of his facility. Paris has therefore exhausted his administrative remedies as required by statute.

## II.   Extraordinary and Compelling Reasons

On November 1, 2023, the Sentencing Commission amended its policy statements under the Guidelines Manual Section 1B1.13(b) to provide explicit examples of what constitutes an "extraordinary and compelling reason." *See* U.S. Sent'g Guidelines Manual App. C, amend. 814, at 204 (Nov. 2023). Paris argues that three such reasons exist to justify his compassionate release that: (1) he is unable to perform self-care; (2) he is receiving inadequate medical care in prison; and (3) he is the sole caregiver for his incapacitated mother. The Court will address each in turn.

### A.   Medical Condition

An extraordinary and compelling reason justifying release exists when a defendant is suffering from a serious physical or medical condition "that substantially diminishes [the defendant's] ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to

recover." USSG §1B1.13(b)(1)(B)(i) (Nov. 2023). Additionally, "a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death" can establish an extraordinary and compelling reason. *Id.* §1B1.13(b)(1)(C). Paris's medical condition falls short of establishing an extraordinary and compelling reason under either subsection.

Here, Paris suffers from unstable keratoconus in both eyes. (Doc. 170-2.) Paris's medical records indicate the condition is "severe." (Doc. 179-2 at 8.) But having a serious physical condition is not by itself an extraordinary or compelling reason. It is Paris's burden to establish his eligibility for compassionate release. *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2021). However, as it relates to §1B1.13(b)(1)(B)(i), Paris offers only the conclusory statement that his condition has "more than substantially diminished [his] ability to provide self-care within a correctional facility and he fears for his safety." (Doc. 179 at 9.) Without further specificity or evidence, the Court cannot make inferences about Paris's self-care abilities or the BOP's ability to provide accommodations, even when it is uncontested that he suffers from a significant medical condition.

The second medical circumstance test presents a closer call. Under §1B1.13(b)(1)(C), Paris has shown that his condition requires long-term medical care. He was recommended for mini-scleral lenses (the "Lenses") in December

4

2022. (Doc. 179-2 at 2.) To date, he has not received this procedure. (*See generally* Doc. 183-1 (showing no record of the Lenses being issued).) But although Paris has been delayed in getting the Lenses, his care appears adequate.

Paris argues that the BOP's failure to provide him with the Lenses represents a "disturbingly inadequate and dismissive" level of care. (Doc. 189 at 6.) He claims the delays in his care have appeared to "cost [him] a significant loss of his vision." (*Id.* at 4.) But this is not borne out by the record. On March 21, 2023, Paris was recommended for fitting and training for the Lenses and his records described his level of care as "Medically Necessary-Non Emergent." (Doc. 179-2 at 2–4.) He had pending consults on July 27, 2023, for follow-ups. (*Id.* at 6.) The government points to a missed callout for vision screening on January 25, 2024, as evidence that Paris has not always availed himself of the care available to him. (Doc. 183-1 at 4.) Nevertheless, Paris followed up with a request for fitting the Lenses on February 4, 2024, and received a vision consult on February 9, 2024. (*Id.* at 2, 22.) While the delay raises legitimate concerns about the time it is taking Paris to receive the Lenses, Paris's records do not establish that the delay has exacerbated his condition.

This case is distinguishable from similar cases where vision loss justified compassionate release. In *United States v. Parramore*, the prisoner was recommended for immediate treatment and an ophthalmologist determined the

5

lengthy delay in his care created an imminent risk of blindness. 2020 WL 3051300 at *1 (W.D. Wash. June 8, 2020). In *United States v. Lindell*, the prisoner "bureaucratically scream[ed]" for help before he went blind, but the BOP failed to provide sufficient treatment. 517 F. Supp. 3d 1141, 1148 (D. Haw. 2021). Here, Paris has not demonstrated that his condition is worsening because of the BOP's delay in getting the Lenses or that he is at immediate risk of further harm and the BOP is not responding to his requests. Again, Paris received a vision consult within a week of his most recent request for a lens fitting. (Doc. 183 at 1, 22.) While a continuing failure to provide Paris with the Lenses could eventually rise to the level of an extraordinary and compelling reason, that point has not yet been reached.

**B.    Family Circumstances**

Paris next argues that because he is the only available caregiver for his mother, who is incapacitated, he has established an extraordinary and compelling reason under §1B1.13(b)(3)(C). (Doc. 179 at 10.) The government counters that "caring for a disabled parent is not" an extraordinary and compelling reason. (*See* Doc. 182 at 9–10 (collecting pre-2023 cases).) But the government is incorrect, and its argument fails to acknowledge the November 1, 2023 revisions to the Guidelines, which now explicitly provide that defendants can demonstrate an extraordinary or compelling reason for compassionate release upon showing the

"incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." USSG §1B1.13(b)(3)(C). Thus, the two questions before the Court are whether Ms. Paris has become incapacitated since her son's incarceration, and whether Paris is his mother's only available caregiver. *See* USSG §1B1.13(b)(3)(C). The answer to both questions is yes.

Ms. Paris is incapacitated. She has many serious medical conditions including kidney disease, COPD, congestive heart failure, and spinal dysplasia. (Doc. 179-3 at 2:17–39.) She is currently in a care home in Woodland, California, where she was moved when her care team felt it was unsafe for her to live at home. (*Id.* at 3:18–33, 4:7–11.) There is nothing in the record to suggest this occurred prior to Paris's incarceration. It is therefore dispositive whether Paris is the "only available caregiver" for his mother. *See* USSG §1B1.13(b)(3)(C). The Court finds that he is.

Ms. Paris is separated from her husband, and has no children other than Paris, making him the only available live-in help. (*See* Doc. 179-3 at 7:38–8:1; *see also* PSR at ¶ 64 (confirming Paris's half-siblings are on his father's side).) The government argues that, even so, Paris is "[un]suitable or [in]capable" of being a caregiver considering his own self-reported struggles with self-care. (*See* Doc. 182 at 9.) There does not appear to be any binding authority on who is suitable as a caregiver in this context, and Paris's citation to persuasive authority appears

7

distinguishable. Neither *United States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019), nor *United States v. Ingram*, 2019 WL 3162305 (S.D. Ohio July 16, 2019), raise any questions about the prisoner's ability to provide care as argued by the government. Under the plain language of the Guidelines, Paris could serve as a caregiver. *See United States v. Calderon Espinosa*, 569 F.3d 1005, 1007 (9th Cir. 2009) (holding that the plain meaning of unambiguous language controls interpretation of the Guidelines). Ms. Paris's needs are for medication pick-up, arranging transportation, cleaning, cooking, and other domestic tasks, which are performed by visually impaired people every day. (Doc. 179-3 at 3:11–16.) Further, the only barrier to Ms. Paris returning to her home appears to be the lack of a live-in caregiver who could contact 911 in case of emergency during the night. (*Id.* at 4:39–5:7.) Nothing in the record suggests that these tasks would be outside of Paris's capabilities, especially after he is fitted with the Lenses.

The government further argues that Ms. Paris is receiving "superior care" in her current facility, (Doc. 182 at 10), but this does not change the analysis. There is no guarantee that Ms. Paris could stay at her current facility indefinitely, and she wishes to return home. (*See* Doc. 179-3 at 5:39–6:7.) It is enough to say that Ms. Paris is incapacitated, she prefers in-home caregiving, and Paris is the only available person who can do it. This represents an extraordinary and compelling reason to justify compassionate release under the Guidelines.

### III. Section 3533(a) Factors

Demonstrating an extraordinary and compelling reason to reduce a sentence meets only one element of § 3582(c)(1)(A). To grant compassionate relief, a court must consider the federal sentencing objectives set forth in 18 U.S.C. § 3553(a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. *See id.* § 3533(a)(1)–(2). Courts may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6).

Paris was involved in distributing methamphetamine in the Billings area. (*See* PSR at ¶¶ 15–17.) He was arrested while attempting to retrieve a shipment of methamphetamine and possessed a handgun at the time of his arrest. (*Id.* ¶ 17.) Paris was found responsible for 294.4 grams of pure or "actual" methamphetamine. (*Id.* ¶ 23.) His previous criminal history was extensive, and he committed the offense for which he is incarcerated while on supervision, increasing his criminal history score to 17 and resulting in a criminal history category of VI. (*Id.* ¶¶ 40–53.) While Paris was credited for accepting responsibility for his actions prior to

trial, he was also alleged to have punched his co-defendant in the face while in pre-trial detention. (*Id.* ¶¶ 35–36; Doc. 136.) Based on these factors, Paris's advisory Guideline range was 188 to 235 months incarceration. (PSR at ¶ 93.) Paris's 140-month sentence was well below the Guideline range. Put simply, his sentence was the lowest the Court could justify in light of his conduct.

Although Paris argues he has been rehabilitated, this is underdeveloped in the record. Further, any rehabilitation by the defendant must be weighed against the § 3553(a) factors, including, as relevant here, the nature and circumstances of the offense, the history and characteristics of the defendant, the need to protect the public, and to provide effective correctional treatment. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(D). Paris and the government disagree on whether he remains a danger to the community. Paris argues that it would be "difficult, if not impossible" for him to engage in further criminal activity if he is released. (Doc. 189 at 10.) The government argues instead that compassionate release would be "wholly insufficient" for the purposes of deterrence, and it would put the community in jeopardy. (Doc. 182 at 12.) The government has the better argument. Paris says that his offense "involved the distribution of drugs." (Doc. 189 at 10.) While that correctly goes to the circumstances of the offense he was sentenced for, it does not account for his history and characteristics. Paris had a criminal history category of VI based upon eight scored offenses and was on

10

supervision when he committed the offense in this case. (PSR at ¶¶ 40–53.) In addition to drugs, his convictions include domestic violence, theft, false imprisonment, and battery. (*Id.* ¶¶ 40–50.) Early release, especially when he would be staying with a vulnerable family member, presents an unacceptable danger to the community.

The need to provide effective correctional treatment also weighs against compassionate release. Paris says he is not able to participate in the Residential Drug Abuse Program ("RDAP") because it is not offered at FCI Mendota. (Doc. 179 at 13.) This is contradicted by the prison's orientation materials. Fed. Bureau of Prisons, *Federal Correctional Institution Satellite Prison Camp Mendota, California Admissions & Orientation Handbook* 36 (2023). However, the availability of RDAP does not change the analysis because every BOP facility offers some form of drug treatment. *Id.* at 35. Paris has been a polysubstance user since early adolescence, with no history of treatment. (PSR at ¶¶ 74–78.) Even if RDAP is currently unavailable to him, the complete lack of any treatment in the record weighs against compassionate release. Considering the length and seriousness of Paris's usage history, it is incumbent upon him to seek out whatever correctional programming is available to address those needs.

Finally, granting Paris compassionate release would denigrate the seriousness of his conduct. Paris was responsible for bringing significant amounts

11

of dangerous drugs into the community. And while he argues that his offense was non-violent, Paris was carrying a handgun when he was arrested. (*Id.* at ¶ 17.) Paris already received a below-guideline sentence. Releasing him after he has served approximately one-third of his sentence would present an unacceptable risk to the community and take away from the seriousness of his conduct. *See* 18 U.S.C. § 3533(a)(2)(A), (C).

## CONCLUSION

Accordingly, IT IS ORDERED that Paris's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Docs. 161, 179) is DENIED.

DATED this 3rd day of May, 2024.

Susan P. Watters, District Judge
United States District Court